By the Court, Nelson, Ch. J.
The u act to reduce several laws relating particularly to the city of New-York, into one act,” (2 R. L. of 1813, p. 407, § 175,) provides, that it shall he lawful for the mayor, aldermen and commonalty of the city to cause common sewers, drains and vaults to be made in any part of the city ; to order, See. the cutting into any drain or sewer, and the altering, amending, cleansing, Sec. oí any street, vault, sink or common sewer, Sec. ; to cause estimates of the expense and a just and equitable assessment thereof to be made among the owners or occupants of all the houses and lots intended to be benefitted thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire. Such assessments are made binding and conclusive upon the owners and occupants, and are declared to be a lien or charge upon their respective lots. (See also the Charters of Gov. Dongan in 1686, and of Gov. Montgomerie in 1730, Kent’s Notes, p. 5 and 58.)
This statute is one of public concern, relating exclusively to the public welfare; and though permissive merely in its terms, it must be regarded, upon well settled rules of construction, as imperative and peremptory upon the corporation, When the public interest calls for the execution of the power thus conferred, the defendants are not at liberty arbitrarily to withhold it. The exercise of the power becomes then a duty, which the corporation are bound to fulfil. In the case of The King v. The Inhabitants of Derby, (Skinner, 370,) a motion was made to quash an indictment found against the inr *615 habitants for refusing to meet and make a rate to pay the constables’ tax. The ground taken for the motion was, that the statute was not imperative, but merely, “ they may meet” &c. The court, however, said : “ may, in the case of a public officer is tantamount to shall; and if he does not do it, (the act required,) he shall be punished” &c. The same principle was also held in the case of The King v. Barlow, (2 Salk. 609, Carth. 293, S. C.) where church wardens were indicted for not making a rate or assessment under the 14 Car. 2, ch. 12, § 18. The statute said, they <c shall have power and authority to make a rate” &c.; and it was insisted, they were simply invested with a power to do the act, but were under no such obligation or duty to perform it as to render them punishable for neglecting it. The court held otherwise : observing, that “ where a statute directs the doing of a thing for the sake of .justice, or the public good, the word may is the same as the word shall.” And it was added, that where a statute says, “ the sheriff may take bail; this is construed, he shall, for he is compelled to do so.” (See also Comb. 220 ; Backwell’s case, 1 Vern. 153 & note (1); The People v. Corp. of Albany, 11 Wend. 539 ; Attorney General v. Lock, 3 Atk. 166 ; Stamper v. Miller, id. 212 ; Newburgh Tump. Co. v. Miller, 5 J. Ch. R. 113 ; Malcom v. Rogers, 5 Cowen, 188.) The inference deducible from the various cases on this subject seems to be, that where a public body or officer has been clothed by statute with power to do an act which concerns the public interest or the rights of third persons, the execution of the power may be insisted on as a duty, though the phraseology of the statute be permissive merely, and not peremptory.
But, independently of this principle, the duty which the defendants are charged with neglecting is quite obvious in another view. The sewers in question were constructed by the corporation under the power conferred by the section of the statute already mentioned. If, therefore, we concede that the exercise of the power was, in the first instance, optional on the part of the corporation, yet, having elected to act under it, they must be held responsible for a complete and perfect exe *616 cution. It would be highly unjust to allow, that after constructing these works the corporation might refuse to keep them in repair, and thus leave the street on which they have been placed in a worse condition than before they were put there. The owners and occupants of houses and lots in the neighborhood having been charged with the expense of the sewers, acquired a right to the common use of them ; and a corresponding duty devolved upon the corporation to keep them in proper condition and repair. This is too obvious to require either argument or authority.
Then, as to the remedy, The case of Henley v. The Mayor and Burgesses of Lyme Regis, (5 Bing. 91,3 Barn, & Adolph. 77, 1 Bing. N. C. 222, S. C. in error,) is a decisive authority on this point. The case was very thoroughly discussed and examined, having been first decided in the common pleas, then carried to the king’s bench, and afterwards to the house of lords. It was an action on the case brought by Henley to recover special damages for an injury arising from neglect to repair certain sea walls; by reason whereof Henley’s house and grounds were inundated and damaged by the action of the sea. The plaintiff recovered ¿£100. The defendants moved in arrest of judgment, and upon this motion the several questions arose which were carried to the house of lords. Park, J. who delivered the opinion of the judges, after stating the case, observed, that in order to make the declaration good, it must appear, first, that the corporation were under a legal obligation to repair the place in question; secondly, that such obligation was matter of so general and public concern, that an indictment would lie against the corporation for non-repair ; thirdly, that the place in question was out of repair ; and lastly, that the plaintiff had sustained some peculiar damage beyond the rest of the king’s subjects, by the omission to repair. The third and last requisites were admitted to have been sufficiently averred in the declaration; and the only doubt in the case arose upon the first and second. The learned judge, after a full examination, came to the conclusion that they also *617 were sufficiently set forth, at least after verdict; and he then took up some of the more general objections made in the course of the argument. One was, that whatever engagement the corporation might be under as between them and the crown, so as to render them liable either to a forfeiture of their charter, or any other proceeding by the crown, yet that no stranger could take advantage of such engagement and maintain an action. In answer to this, the learned judge referred to the admitted doctrine, that if the liability to repair arose by prescription, the corporation would be indictable; and he also referred to the authorities, by which, he said, it was clear and undoubted law, that wherever an indictment lies for non-repair, an action on the case will lie at the suit of a party sustaining any peculiar damage. (The Mayor &c. of Lynn v. Turner, Cowp. 86 ; Churchman v. Tuntal, Hardr. 162 ; Payne v. Partridge, Show. 255 ; Carth. 191.) He proceed to show that no sound distinction existed between a liability by prescription, and a liability arising within the time of memory; that if the origin of the liability was legal, it was wholly unimportant when it took place. He added: “We do not go the length of saying that a stranger can take advantage of an agreement between A. and B., nor even of a charter granted by the king, where no matter of general and public concern is involved; but where that is the case, and the king, for the benefit of the public, has made a certain grant, imposing certain public duties, and that grant has been accepted, we are of opinion that the public may enforce the performance of those duties by indictment, and individuals peculiarly injured, by action. If it were otherwise,” he justly observed, (and the observation is appropriate to the case in hand,) “ many inconveniences would follow. Among them, in the case in question, is this : that as the duty and the right to repair the sea defences of the town and borough is cast upon the corporation, no other person would be justified in interfering and doing repairs, however necessary, or, at all events, not until the corporation had been called upon and neglected to do them; (The *618 Earl of Lonsdale v. Nelson, 2 Barn, & Cress. 302 ;) and it is doubtful whether he would be justified even then, the proper remedy being, as there stated, by indictment or action; for nuisances of omission cannot in general be abated.”
It has been argued that inasmuch as the corporation had organized a department for the purpose of superintending, among other things, the cleansing and repairing of the culverts and common sewers of the city, had appointed competent officers, and made it their special duty to attend to this service, they thereby fulfilled all the obligations enjoined upon them in this respect j and the plaintiff’s remedy for damages occasioned by the neglect or omission complained of should have been sought personally against those officers. (See By-laws and Ordinances of the City, pub. by the Com. Council, 1839, p. 35—38.) This argument proves too much; for if it furnished a sufficient answer to the private action, it would be equally fatal to an indictment, which it is conceded would lie against the corporation according to all the books. (Woolrych on Ways, 76—80, 220 ; 3 Campb. 222 ; 3 East, 86 ; The Mayor &c. of Lyme Regis v. Henley, supra ; The People v. The Corporation of Albany, 11 Wend. 539.) The same answer might also have been given in several of the cases where the private action has been sustained. In the case of The King v. Inhabitants of St. George, Hanover Square, (3 Campb. 222,) the defendants were indicted for not repairing a pavement; and, in answrnr, they showed that it had been made the duty of certain officers, by statute, to attend to the subject, and a fund put under their control for that purpose. But 'the court held the defendants were not thereby exempt; that they must, in the first instance, see that the street was properly paved, and seek a remedy over against the commissioners. (See also The King v. Inhabitants of Netherthong, 2 Barn, & Ald. 179.) Though a municipal corporation is not liable for the improper execution of a public work by agents whom they are obliged to employ, (Bailey and others v. The Mayor &c. of New-York, ante, 531, 538,) yet the same rule does not apply where a duty, specifi *619 cally enjoined upon the corporation as such, has been wholly neglected by its agents. In the latter case, if an injury'to an individual arise in consequence of the neglect, the corporation will be held responsible, notwithstanding the agents were properly selected and necessarily employed.
Judgment affirmed.